1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SELINGER | Case No. 2:22-CV-08883-SPG-KS |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION TO REMAND CASE TO LOS ANGELES SUPERIOR COURT [ECF Nos. 12, 13]** |
| v. | |
| FORD MOTOR COMPANY, and DOES 1 through 10, inclusive, | |
| Defendants. | |

Before the Court is Plaintiff Mark Selinger's ("Plaintiff") motion to remand case to Los Angeles County Superior Court ("Motion"). (ECF No. 12 ("Mot.")). Having considered the parties' submissions, the relevant law, the record in this case, and the hearing on the Motion, the Court DENIES the Motion.

## I.   BACKGROUND

### A.   Factual Background

The complaint alleges as follows: Plaintiff is a resident of California. (ECF No. 1-3 ¶ 1 ("Compl.")). Ford Motor Company ("Defendant") is incorporated in Delaware and "has designated a principal place of business within California . . . ." (*Id.* ¶ 2). On or about January 4, 2019, Plaintiff purchased a 2019 Ford Fusion, VIN

3FA6POHD3KR148844 ("Subject Vehicle") from Defendant's authorized retailer in California. (*Id.* ¶ 4). The Subject Vehicle was manufactured and distributed by Defendant and equipped with Defendant's 1.5L EcoBoost engine. (*Id.* ¶ 5). Defendant gave Plaintiff an express written warranty wherein Defendant undertook to preserve or maintain the utility or performance of the Subject Vehicle or provide compensation if there was a failure in utility or performance. (*Id.* ¶ 6). The warranty provided that if the Subject Vehicle were to malfunction due to a defect, then Plaintiff could present the Subject Vehicle to Defendant's authorized repair facility(ies) during the warranty period for repairs of such defect. (*Id.*).

During the warranty period, the Subject Vehicle contained and/or developed defect(s) which manifested in symptoms including but not strictly limited to, engine overheating; loss of coolant; coolant leaks; activation of diagnostic trouble codes ("DTCs") P0300, P0301-P0304, P0316, P0217, P1285 and/or P1299; coolant intrusion into the engine cylinders; rough running; excessive smoking from the exhaust; lack of power; sensation that the vehicle was struggling to accelerate; and failure of turbocharger. (*Id.* ¶ 7). Plaintiff presented the Subject Vehicle for repairs to Defendant's authorized repair facility(ies). (*Id.* ¶ 8). However, Defendant, through its authorized repair facility(ies), was unable to repair the Subject Vehicle within a reasonable number of opportunities. (*Id.*).

The complaint then alleges that, "[t]hrough its communications with its authorized repair facilities and other information available to it (including [Defendant's] numerous service bulletins and recall campaigns, internal communications, and investigations into the nature of the same defects in 2019 Ford Fusion vehicles equipped with the 1.5L EcoBoost engine, warranty claims submitted to it, communications from its authorized repair facilities, communication from its consumer, etc.), [Defendant] knew or should have known that it was required to provide restitution (i.e., a repurchase) or replace the [Subject Vehicle]. Notwithstanding such knowledge, [Defendant] willfully refused to do so." (*Id.* ¶ 9).

### B.   Procedural History

####   1.   Complaint

On July 29, 2022, Plaintiff filed a complaint against Defendant in Los Angeles County Superior Court. (Compl.).  The complaint asserts four causes of action, all of which are under state law: (1) Breach of Warranty Obligation to Provide Restitution or Replacement, Cal. Civ. Code § 1793.2(d)(2), (*id.* ¶¶ 10-21); (2) Breach of Obligation to Commence or Complete Repairs Within Thirty (30) Days, Cal. Civ. Code § 1793.2(b), (*id.* ¶¶ 22-28); (3) Breach of Implied Warranty of Merchantability, Cal. Civ. Code § 1792, (*id.* ¶¶ 29-33); and (4) Fraudulent Inducement–Concealment, (*id.* ¶¶ 34-60).

For its first cause of action, the complaint asserts that "Plaintiff is entitled to damages, including restitution or replacement, for [Defendant's] failure to comply with its obligations under the Song-Beverly Consumer Warranty Act." (*Id.* ¶ 18).  The complaint further alleges as to both the first and second causes of action that Defendant acted willfully when it refused to comply with its obligations under the Song-Beverly Consumer Warranty Act, and therefore under Cal. Civ. Code § 1794(c) "Plaintiff is entitled to civil penalty damages of up to two times the amount of actual damages." (*Id.* ¶¶ 20, 28).

For its third cause of action, the complaint asserts that Plaintiff "is entitled to[] justifiably revoke acceptance of the [Subject Vehicle].  Accordingly, Plaintiff seeks remedies provided in Cal. Civ. Code 1794(b), including recovery of the entire contract price.  Alternatively, Plaintiff seeks the diminution in value of the [Subject Vehicle] resulting from the defect(s)." (*Id.* ¶ 33).

Finally, for its fourth cause of action, the complaint asserts that "[a]s a result of [Defendant's] fraudulent misconduct, Plaintiff has suffered and will continue to suffer actual damages.  Such damages include recission of the contract, restitution of all payments towards the purchase of the [Subject Vehicle], out of pocket expenses, diminution in value, in addition to noneconomic damages (i.e., emotional distress)." (*Id.* ¶ 59).

The complaint's prayer for relief requests the following in recovery: (1) "Plaintiff's actual economic damages (including the right of restitution, incidental damages, and

consequential damages, as outlined in Cal. Civ. Code 1793.2(d)(2) & 1794(b)) in an amount according to proof"; (2) noneconomic damages; (3) "civil penalty damages of no more than two times Plaintiff's actual damages, as per Cal. Civ. Code 1794(c) or (e)"; (4) punitive damages; (5) "costs and expenses, including Plaintiff's attorney's fees, pursuant to Cal. Civ. Code § 1794(d) and Cal. Code Civ.. Proc. § 1032 & 1033.5"; (6) prejudgment interest at the legal relief; and (7) "such other relief as the Court may deem proper." (*Id.* at 14). Notwithstanding these requests, the complaint does not state an amount-in-controversy.

### 2.    Defendant's Notice of Removal

On December 7, 2022, Defendant removed the action to this Court based on diversity jurisdiction. (ECF No. 1 ("Removal")). In the Notice of Removal, Defendant explains that "[a]t the outset of this litigation, the amount in controversy could not be ascertained on the face of the Complaint." (*Id.* ¶ 2). Defendant then states:

> On October 5, 2022, [Defendant] served Requests for Production on Plaintiff, which asked Plaintiff to provide any and all documents that refer or relate to Plaintiff's purchase of the Subject Vehicle. *See* [(ECF No. 1-6)]. On November 7, 2022, Plaintiff served documents in response to [Defendant's Requests for Production including a copy of the sales contract which indicated that the total purchase price was "$33,526.80." [(ECF No. 1-9)]. Further in his Prayer for Relief, Plaintiff states that he seeks "restitution," "civil penalty damages of no more than two times Plaintiff's actual damages," and "punitive damages." [(ECF No. 1-3 at 12)]. Consequently, the total amount of damages Plaintiff seeks exceed $75,000 ($33,526.80 + ($33,526.80 x 2 [Song Beverly Act civil penalty]) + $33,526.80 x 9 [punitive damages]) = $402,321.60).

(*Id.* ¶ 12). The Notice of Removal also asserts that "[a] mileage offset calculation does not need to be accounted for" in determining whether the amount-in-controversy requirement was met, *see* (*id.* ¶¶ 13-14), and that Defendant "anticipates that past and future attorney's fees will total at least $50,000" were Plaintiff to succeed in his action. *See* (*id.* ¶ 15). Finally, to argue that complete diversity exists, the Notice of Removal asserts that Defendant "is, and was at the time Plaintiff commenced this action, a corporation organized

under the laws of the State of Delaware with its principal place of business in Michigan." (*Id.* ¶ 17).  The Notice of Removal includes a declaration by Defendant's counsel, along with eight different exhibits labelled A through H.  (ECF Nos. 1-1; 1-2; 1-3; 1-4; 1-5; 1-6; 1-7; 1-8; 1-9).

### 3.   Plaintiff's Motion to Remand

On December 20, 2022, Plaintiff filed the instant Motion, supported by a declaration of Plaintiff's counsel and exhibits.  (Mot.); (ECF Nos. 12-1; 12-2).  The Motion argues that remand is appropriate because Defendant's removal was not filed within 30 days of service of the pleadings and, therefore, is untimely under 28 U.S.C. § 1446(b)(1).  *See* (*id.* at 5–6).  The motion also argues that Defendant has not sufficiently established the amount-in-controversy requirement for a number of reasons.  (*Id.* at 7–12).  On January 6, 2023, Plaintiff filed a supplemental memorandum, which argued that Defendant also failed to account for a manufacturer's rebate and negative equity in its amount-in-controversy calculations.  *See* (ECF No. 13 ("Supp.")).  On January 25, 2023, Defendant filed an opposition to the Motion, along with a declaration from Defendant's counsel and exhibits.  (ECF Nos. 19 ("Opp."); 19-1; 19-2; 19-3).  Plaintiff filed a reply to Defendant's opposition on January 27, 2023.  (ECF No. 20 ("Reply")).

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute. . . .  It is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).  A suit filed in a state court may be removed to federal court if the federal court would have had original jurisdiction over the suit.  28 U.S.C. § 1441(a).  Federal courts have original jurisdiction where an action presents a federal question under 28 U.S.C. § 1331, or diversity of citizenship under 28 U.S.C. § 1332.  Thus, a defendant may remove a case from state court to federal court pursuant to the federal removal statute, 28 U.S.C. § 1441, based on either federal question or diversity jurisdiction.

Courts have diversity jurisdiction over cases where there is complete diversity of parties and the amount "in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. . . ." 28 U.S.C. § 1332(a). A defendant may remove an action to federal court based on diversity jurisdiction "provided that no defendant 'is a citizen of the State in which such action is brought.'" *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (quoting 28 U.S.C. § 1441(b)). An individual is a citizen of the state where he or she is domiciled. This means the state where the person resides with the intent to remain or the place to which he or she intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "[A] corporation . . . [is] . . . deemed . . . a citizen of any state by which it has been incorporated and of the state where it has its principal place of business." 28 U.S.C. § 1332(c). A corporation's "principal place of business" refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). This is commonly known as the "nerve center." *Id.* at 92–93. "[I]n practice it should normally be the place where the corporation maintains its headquarters." *Id.*

The removal statute is strictly construed against removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941). There is a "strong presumption" against removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992) (citation omitted). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566 (citation omitted).

## III.   DISCUSSION

### A.   Removal is Timely

Plaintiff's Motion first argues that remand is appropriate because Defendant's removal is untimely under 28 U.S.C. § 1446(b)(1). *See* (Mot. at 5–6). Citing *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 693 (9th Cir. 2005), Defendant responds that its notice of removal is timely because the 30-day deadline only began to run when a pleading

in the case revealed that the amount-in-controversy requirement was established. *See* (Opp. at 12). The Court agrees that Defendant's notice of removal is timely.

A plaintiff may file a motion to remand the case to state court within 30 days after filing of the notice of removal for "any defect other than the lack of subject matter jurisdiction." 28 U.S.C. § 1447(c). Untimely removal is a procedural defect that may defeat removal if properly raised by the party seeking remand. *See Smith v. Mylan Inc.*, 761 F.3d 1042, 1045 (9th Cir. 2014). The time period to file a notice of removal is governed by 28 U.S.C. § 1446(b). Under section 1446(b), a defendant must remove an action within thirty days if the case stated by the initial pleading is "removable on its face." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010) (internal quotations and citation omitted). However, where, as here, the basis for removal is not apparent from the face of the complaint, "a notice of removal may be filed within [30] days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Defendant argues that Plaintiff's responses to Defendant's Requests for Production on November 7, 2022, which included a document entitled "Retail Installment Sale Contract – Simple Finance Charge" ("RISC") that revealed the Total Sale Price for the vehicle of $33,526.80,[1] were the first to reveal that the amount-in-controversy exceeded $75,000 and therefore, the clock began to run on that date. (Opp. at 12). Plaintiff does not dispute the substance of the RISC; rather, Plaintiff argues:

> [W]hile [Defendant] may claim that it needed to serve discovery and obtain the responses to ascertain the amount in controversy and whether the action was removable, such is not the case. Indeed, in this action, [Defendant's] October 24, 2022 response to Plaintiff's Requests for Production (as served in the state court action) noted that [Defendant would produce the [RISC] for [Plaintiff's] vehicle. . . . And [Defendant's] document production also included a copy of the sales contract for [Plaintiff's] vehicle as well. Such

---

[1] The RISC defines "Total Sale Price" as: "The total cost of your purchase on credit, including your down payment of $1,800." (ECF No. 1-9 at 2).

responses and agreement demonstrates [sic] that [Defendant] had access to the very document it relied upon to remove the instant action.  As such, it was clear that [Defendant] had access to (and possibly had actual knowledge of) the cost of the [S]ubject [V]ehicle for purposes to removing this matter as early as October 24, 2022 (if not sooner) when it agreed to produce the sales contract.  Accordingly, the December 7, 2022[,] removal is well past the 30 day deadline for removal.

(Mot. at 6).

However, Defendant's *subjective* knowledge is irrelevant to determining when the 30-day clock begins.  In *Harris*, the Ninth Circuit, quoting the Fourth Circuit, expressly rejected "subjective knowledge as a test for notice" when it explained:

We will not require courts to inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when.  Rather, we will allow the court to rely on the face of the initial pleadings and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleadings or subsequent paper.

425 F.3d at 695 (quoting *Lovdern v. GMC*, 121 F.3d 160, 162 (4th Cir. 1997)).  *Harris* therefore held that the 30-day clock begins to run "if [the case] is rendered removable by virtue of a change in the parties or other circumstances *revealed in a newly-filed 'paper.'"* *Id.* at 694 (emphasis added).  The term "other paper" generally includes any document in the record of the state court proceedings or discovery responses.  28 U.S.C. § 1446(c)(3)(A); *see also De Paredes v. Walmart, Inc.*, 2:20-cv-08297-RGK-AFM, 2020 WL 6799074, at *2 (C.D. Cal. Nov. 17, 2020) (citation omitted).  Thus, assuming the RISC sufficiently establishes the requisite amount-in-controversy requirement (which, for the following reasons, the Court finds that it does), the Court concludes that Defendant's Notice of Removal is timely because the 30-day clock began to run on November 7, 2022, and the Notice of Removal was filed on December 7, 2022.

**B.     The Court Has Diversity Jurisdiction**

A plaintiff who contests the existence of removal jurisdiction may move to remand by raising either a "facial" or "factual" attack on the defendant's jurisdictional allegations. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).   A facial attack accepts the allegations as true, but asserts they are "insufficient on their face to invoke federal jurisdiction." *Id.* at 1121 (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).   A factual attack, by contrast, contests the truth of the allegations themselves, either by introducing evidence outside the pleadings or "by making a reasoned argument as to why any assumptions on which [the allegations] are based are not supported by evidence." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020) (citations omitted).   Once a plaintiff mounts a factual attack, the defendant has the burden of proving, by a preponderance of the evidence, the basis for removal jurisdiction. *See id.* at 700–01 ("[W]hen given the opportunity to present evidence, following [plaintiff's] motion to remand, [defendant] had the burden of supporting its jurisdictional allegations with competent proof." (internal quotation marks omitted)).   "Both parties may submit evidence supporting the basis for jurisdiction before the district court rules." *Id.* at 699.   The "burden of persuasion for establishing diversity jurisdiction . . . remains on the party asserting it." *Hertz*, 559 U.S. at 96 (citations omitted).   Thus, "[w]hen challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Id.* at 96–97 (citations omitted).

1.     Complete Diversity

The complaint alleges that Defendant is incorporated in Delaware and "has designated a principal place of business within California . . . ." (Compl. ¶ 2). To dispute this assertion, Defendant relies on the declaration of its own counsel, which states that Ford is "incorporated in the state of Delaware, and the state of Michigan serves as its principal place of business."  (ECF No. 1-1 ¶ 4).  Attached to counsel's declaration as one of its exhibits is Defendant's 10-K filing for the fiscal year ending December 31, 2020.  (ECF

No. 1-2). This 10-K filing also indicates that Defendant's "principal executive offices" are in Dearborn, Michigan.[2] (*Id.*).

In response, Plaintiff does not challenge the existence of complete diversity. Nor does Plaintiff dispute Defendant's assertion or evidence demonstrating complete diversity in either Plaintiff's Motion or reply to the opposition. Thus, based on the evidence in the record, the Court finds complete diversity to be established. *See Dalton v. FCA US LLC*, 8:20-cv-00694-JLS-DFM, 2020 WL 3868389, at *1 (C.D. Cal. July 9, 2020) ("As to diversity of citizenship, 'when a defendant's allegations of citizenship are unchallenged, nothing more is required.'" (quoting *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1228 (9th Cir. 2019)).

## 2. Amount-in-Controversy

Diversity jurisdiction also requires that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). However, where, as here, a plaintiff's state court complaint does not specify a particular amount of damages, and a plaintiff launches a factual attack as to the Defendant's Notice of Removal on this point, the removing party bears the burden of establishing, by a preponderance of the evidence, that the matter in controversy exceeds the threshold at the time of removal. *See Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 849 (9th Cir. 2020) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015) ("[W]hen the defendant's assertion of the amount in controversy is challenged by plaintiffs in a motion to remand, the Supreme Court has said that both sides submit proof and the court then decides where the preponderance lies."

---

[2] The Court notes that the Supreme Court has rejected the suggestion that "the mere filing of a form like the Securities and Exchange Commissions' Form 10-K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'" *Hertz*, 559 U.S. at 97. "Such possibilities would readily permit jurisdictional manipulation, thereby subverting a major reason for the insertion of the 'principal place of business' language in the diversity statute." (*Id.*). Instead, courts consider as the "nerve center" the place of actual direction, control, and coordination. *Id.*

1  (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88-89 (2014));
2  *see also Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1136 (N.D. Cal. 2020) ("They
3  make a factual attack on Starbucks' estimates of the amount in controversy by contesting
4  its evidence and reasoning, and without introducing extrinsic evidence of their own.").
5  "Under this burden, the defendant must provide evidence establishing that it is 'more likely
6  than not' that the amount in controversy exceeds that amount." *Sanchez*, 102 F.3d at 404
7  (citations omitted).  "The amount in controversy is simply an estimate of the total amount
8  in dispute, not a prospective assessment of [a] defendant's liability." *Arias v, Residence
9  Inn*, 936 F.3d 920, 927 (9th Cir. 2019) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d
10  395, 400 (9th Cir. 2010)) (internal quotations omitted).  When assessing the amount in
11  controversy, a court "may consider [the] allegations in the complaint and in the notice of
12  removal, as well as [relevant] summary-judgment-type evidence." *Chavez v. JP Morgan
13  Chase & Co.*, 888 F. 3d 413, 416 (9th Cir. 2018).  Additionally, a party's allegations in its
14  opposition to a motion to remand are considered amendments to its notice of removal.
15  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002).
16      Plaintiff raises four arguments in support of remanding the case for not meeting the
17  amount-in-controversy requirement: (1) any restitution sought would be deducted using a
18  "mileage offset" under the statute, and because Defendant fails to take this deduction into
19  account for its amount-in-controversy calculations, Defendant's calculations are overly
20  speculative for purposes of this Motion, (Mot. at 7–8); (2) because civil penalty damages
21  under the Song-Beverly Consumer Warranty Act "*may* be awarded . . . if the buyer
22  establishes that the manufacturer willfully failed to comply with its obligations," Defendant
23  was obligated to show why said damages should be assessed in order to be included in its
24  amount-in-controversy estimate, *see* (*id.* at 8–11); (3) Defendant's reliance on speculative
25  attorney's fees, costs and expenses do not support its burden of proof, (*id.* at 11–12); and
26  (4) Defendant's amount-in-controversy is also flawed because it does not consider either

the manufacturer's rebate or negative equity.[3]  (Supp. at 3).  As discussed below, the Court disagrees with each of Plaintiff's arguments.

### a.   *Mileage Offset*

Defendant argues that the Court "need not" calculate a mileage offset in this case because Plaintiff seeks "recovery of the entire recovery price," not the contract price minus a mileage offset.  (Opp. at 16–17).  And even if a mileage offset is calculated, the amount-in-controversy is still met.  (*Id.* at 17–18).  The Court agrees.

Plaintiff seeks damages pursuant to California Civil Code § 1793.2(d)(2).  (Compl. ¶ 18).  California Civil Code 1793.2(d)(2) provides that, if a vehicle manufacturer is unable to "conform [the vehicle] to the applicable express warranties after a reasonable number of attempts," the manufacturer must either "promptly replace the new motor vehicle" or "promptly make restitution to the buyer in accordance with subparagraph (B)."  California Civil Code 1793.2(d)(2)(B) states:

> In the case of restitution, the manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer.

However, California Civil Code § 1793.2(d)(2)(C) further states: "[w]hen restitution is made pursuant to subparagraph (B), the amount to be paid by the manufacturer to the buyer

---

[3] Plaintiff also argues Defendant has not sufficiently established the amount-in-controversy requirement, in part, because Defendant did not include "summary judgment-type evidence" in the Notice of Removal.  (Mot. at 7).  Defendant argues that "Plaintiff misstates the law in arguing that [Defendant's] Notice of Removal must prove that the amount in controversy is satisfied with summary judgment type evidence."  (*Id.* at 13).  Citing *Arias*, 936 F.3d at 920, Defendant asserts that it was "only required to offer proof of the amount in controversy after Plaintiff has made an evidentiary challenge – with proof – that the amount in controversy is actually under $75,000."  (*Id.*).  The Court agrees with Defendant.

*may* be reduced by the manufacturer by that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity." Commonly referred to as the "mileage offset," this deduction "is determined by multiplying the 'actual price of the new motor vehicle paid or payable by the buyer . . . by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer delivered the vehicle' for correction of the problem." *Messih v. Mercedes-Benz USA, LLC*, Case No. 21-cv-03032-WHO, 2021 WL 2588977, at *5 (N.D. Cal. June 24, 2021) (quoting Cal. Civ. Code § 1793.2(d)(2)(C)) (emphasis added).

The parties dispute whether a plaintiff is obligated to present evidence regarding this mileage offset to show, by a preponderance of the evidence, that the amount in controversy requirement is met. The Ninth Circuit has not addressed this precise question. However, Courts in this Circuit have taken several different approaches to address this issue. First, courts have looked to the plaintiff's complaint to determine whether it requests "the entire contract price," as opposed to the contract price minus deductions. If the complaint has not included deductions, courts have held the defendant did not need to present evidence regarding this mileage offset for purposes of the amount-in-controversy requirement. *See, e.g.*, *Baumanns v. FCA US LLC*, No. 3:21-cv-1054-JLS-MSB, 2021 WL 5564497, at *5 (S.D. Cal. Nov. 29, 2021) (rejecting plaintiff's argument that "it is insufficient to merely point to [p]laintiff's purchase price in ascertaining actual damages" because "Plaintiff claims in his Complaint that 'he seeks the remedies provided in California Civil Code 1794(b)(1), including the entire contract price." (internal quotations omitted)); *Cruz v. Mercedes-Benz USA, LLC*, No. 5:21-cv-00809-JGB-SHK, 2021 WL 2634819, at *2 (C.D. Cal. June 25, 2021) ("Plaintiff is incorrect that Defendant has not sufficiently demonstrated the amount in controversy because Defendant has not shown how many miles Plaintiff drove before Plaintiff's car broke down . . . . Plaintiff's assertion on the face of the Complaint that he is entitled to recover the entire value of his lease leads to a reasonable

inference on the part of Defendant that Plaintiff did not drive any miles before the car broke down."); *Gupta v. Mercedes-Benz USA, LLC*, No. CV 20-9295-GW-JEMX, 2020 WL 7423111, at *3 (C.D. Cal. Dec. 10, 2020) (including the entire purchase price in determining amount in controversy and denying motion to remand when Plaintiff claimed entitlement to recover "the entire price of subject vehicle").

As a second approach, other courts have held that the mileage offset, along with other vehicle-value reductions, are simply "not appropriate" for consideration for determining the amount-in-controversy. *See, e.g.*, *Tucker v. FCA US LLC*, No. 2:21-cv-02908-GW-MAA, 2021 WL 3733243, at *3 (C.D. Cal. Aug. 23, 2021); *Wickstrum v. FCA USA LLC*, No. 3:20-cv-00336-L-JLB, 2021 WL 532257, at *2 (S.D. Cal. Feb. 12, 2021); *Pristave v. Ford Motor Co.*, No. CV 20-04892-AB (Ex), 2020 WL 4883878, at *3 (C.D. Cal. Aug. 20, 2020).

Still other courts have held that a plaintiff should present evidence regarding the mileage offset when arguing the requisite amount-in-controversy. *See, e.g.*, *Bourland v. Ford Motor Company*, Case No. 5:19-cv-08456-EJD, 2020 WL 5797915, at *4 (N.D. Cal. Sept. 29, 2020) ("Defendants argue that this offset is irrelevant to the amount in controversy, but cite no authority in support of their position. . . . Defendants are mistaken; a mileage offset is both relevant and important to the calculation of amount in controversy." (citations omitted)); *Cox v. Kia Motors America, Inc.*, Case No. 20-cv-02380-BLF, WL 5814518, at *3 (N.D. Cal. Sept. 30, 2020) ("This statutory offset, referred to by some courts as the "mileage offset," properly is considered when determining the amount in controversy for jurisdictional purposes." (citation omitted)); *Hernandez v. FCA US, LLC*, CV 20-1058-RSWL-MAA, 2020 WL 3497399, at *3 (C.D. Cal. June 29, 2020) ("Here, Defendant neglected to take into account the mileage offset when alleging that the amount in controversy exceeds the jurisdictional minimum. Accordingly, Defendant has failed to prove actual damages by a preponderance of the evidence." (citations omitted)); *Mulin v. FCA US, LLC*, CV 20-2061-RSWL-PJW, 2020 WL 2509081, at *3 (C.D. Cal. May 14, 2020) ("Because Defendants neglected to take the mileage offset into account, they failed

to meet their burden of showing Plaintiff's actual damages based on the purchase price of the vehicle.").

Based on other Ninth Circuit caselaw discussing the amount in controversy requirement, this Court agrees with the courts that have held a removing defendant is not obligated to present evidence regarding the mileage offset to establish the amount-in-controversy requirement for claims arising under the Song Beverly Act. "[T]he amount in controversy is not a prospective assessment of [a] defendant's liability. . . . Rather, it is the amount at stake in the underlying litigation . . . whatever the likelihood" of success on the merits. *Chavez*, 888 F.3d at 417 (internal quotations and citations omitted). "In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover," and it is assessed at the time of removal. *Arias*, 936 F.3d at 927 (citing *Chavez*, 888 F.3d at 417) (emphasis in original). The amount-in-controversy should include "any result of the litigation, excluding interests and costs, that entails a payment by the defendant," including "damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees. . . ." *Fritsch v. Swift Transportation Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (citations and internal quotations omitted).

Of course, "an estimate of the amount in controversy must be reduced if 'a specific rule of law or measure of damages limits the amount of damages recoverable.'" *Schneider v. Ford Motor Co.*, 756 Fed. Appx. 699, 701 n.3 (9th Cir. 2018) (quoting *Morris v. Hotel Riviera, Inc.*, 704 F.2d 1113, 1115 (9th Cir. 1983)). However, the "amount in controversy represents only the 'amount at stake in the underlying litigation,' not the likely liability." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020) (citing *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016). Thus, "the 'strength of any defenses indicates the likelihood of the plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation." *Id.* (citing *Arias*, 936 F.3d at 928); *In Re: Ford Motor Co. DPS6 Powershift Transmission Products Liab. Litig.*, No. 2:18-ML-02814-AB-PVC, 2018 WL 5905942, at *4 (C.D. Cal. Sept. 10, 2018) ("But again, the

amount in controversy is established by what the plaintiff demands, not by any reductions that a defendant might achieve through its defenses." (citation omitted)).  After all, "if a district court had to evaluate every possible defense that could reduce recovery below the jurisdictional amount[] the district court would essentially have to decide the merits of the case before it could determine if it had subject matter jurisdiction."  *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010).

Further, unlike statutory caps on damages, which are applied by obligation, the mileage offset defense mentioned in section 1793.2 is not automatically applied in cases arising under the Song-Beverly Act.  Instead, section 1793.2 explicitly states that "when restitution is made . . . the manufacturer . . . *may* [reduce the amount] . . . directly attributable to [the prior] use."  *See also Niedermeier v. FCA US LLC*, 56 Cal. App. 5th 1052, 1064 (2020) ("the Act *permits* a manufacturer to reduce the restitution." (emphasis added)).  In other words, if Defendant fails to affirmatively (and successfully) raise the mileage offset defense at trial, then it would have to reimburse Plaintiff the entire purchase price, without consideration of the Subject Vehicle's mileage/use.  *See Wickstrum*, 2021 WL 532257, at *2.  However, here, consideration of the mileage offset at this stage is not necessary because – to determine whether the amount-in-controversy requirement is established – the Court is only concerned with the "maximum recovery" that Plaintiff can reasonably recover in this action.  *Arias*, 936 F.3d at 927.  It is not concerned with a potential defense which may or may not be raised by Defendant at a later stage of the proceedings.  The Court also finds that because the complaint seeks remedies provided in California Civil Code section 1794(b)(1), "including recovery of the entire contract price," Plaintiff has effectively put the "entire contract price" of $33,526.80[4] in controversy for

---

[4] "Under the Song–Beverly Act, the actual price paid or payable by the buyer [only] includes any paid finance charges." *Alvarado v. FCA US, LLC*, No. EDCV 17-505 JGB (DTBx), 2017 WL 2495495, at *4 (C.D. Cal. Jun. 8, 2017).  Because the record does not show whether Plaintiff has made all the installment payments, the Court cannot determine whether Plaintiff has paid all the finance charges that are included in the total sale price of the Vehicle.  As such, for this Motion, the Court will use the total cash price of $33,526.80

purposes of determining what the maximum amount-in-controversy is. (Compl. ¶ 33); *see, e.g.*, *Baumanns*, 2021 WL 5564497, at *5 (S.D. Cal. Nov. 29, 2021); *Cruz*, 2021 WL 2634819, at *2; *Gupta*, 2020 WL 7423111, at *3.

### b.   Civil Penalty Damages

Plaintiff argues remand is appropriate because Defendant's estimate of the amount in controversy is speculative, given that it simply relies on the fact that the Complaint seeks civil penalty damages under the Song-Beverly Act. (*Id.* at 8–11). Specifically, Plaintiff argues that, although the Song-Beverly Act does permit up to two times the amount of actual damages as a civil penalty, Defendant has "failed to (and will be unable to) provide any evidence of whether (and how much) civil penalties are likely to be awarded," thus they should not be included. (Mot. at 11). Defendant responds that because the complaint seeks civil penalty damages and alleges Ford acted willfully, civil penalties under the Song-Beverly Act are "at stake" and should be included. (Opp. at 19). The Court agrees with Defendant.

Under California Civil Code 1794(c), the buyer of a defective consumer good may receive a civil penalty "not [to] exceed two times the amount of actual damages" if the buyer establishes that the failure to comply was "willful." Like the mileage offset, courts also differ on whether the maximum civil penalty should be considered when assessing the amount-in-controversy requirement. *See Verastegui v. Ford Motor Co.*, No. 19 CV-04806-BLF, 2020 WL 598516, at *3 (N.D. Cal. Feb. 7, 2020) ("[C]ourts in this district have varying views as to whether the maximum civil penalties should be considered when deciding the amount in controversy." (citations omitted)).

---

listed in the RISC as the measure of actual damages to decide the actual price. *See* (ECF No. 1-9); *see, e.g., Messih*, 2021 WL 2588977, at *4 (noting that district courts "have found total cash price appropriate in calculating actual damages sought under the Song-Beverly Act." (citations omitted)).

However, this Court concludes that civil penalties should be considered. As already discussed, in determining the amount-in-controversy, court are to consider the "maximum recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 927. For this reason, multiple courts have held that these civil penalties are properly considered when determining whether the amount in controversy requirement is met. *See, e.g.*, *Verastegui*, 2020 WL 598516, at *3 (recognizing split in authority regarding whether maximum civil penalty should be considered as part of the amount in controversy and stating that "the Court is persuaded by the decisions in which courts have considered the maximum recoverable civil penalties because that is what Plaintiff put in controversy"); *Jimenez v. Ford Motor Co.*, 3:21-cv-04967-VC, 2021 WL 5149865, at *1 (N.D. Cal. Nov. 5, 2021); *Canesco v. Ford Motor Co.*, 570 F. Supp. 3d 872, 902 (S.D. Cal. Nov. 4 2021); *Treauhaf v. Mercedes-Benz USA, LLC*, No. 2:20-cv-11155-SVW-GJS, 2021 WL 2864877, at *2 (C.D. Cal. July 16, 2021); *Rahman v. FCA US LLC*, Case No. 2:21-cv-02584-SB (JCx), 2021 WL 2285102, at *2-3 (C.D. Cal. June 4, 2021).

Here, the complaint alleges Defendant's conduct to be willful for purposes of assessing civil penalty damages. (Comp. ¶¶ 9, 20, 28, 60). In particular, the complaint alleges that Defendant willfully violated the Song-Beverly Act in multiple ways, including by refusing to comply with its obligations to: (1) promptly offer restitution or replacement for the vehicle; and (2) commence service and repair within a reasonable time or to complete such service or repairs within thirty days. (Compl. ¶¶ 17, 24). Plaintiff also alleges that these violations entitle him to "civil penalty damages of no more than two times Plaintiff's amount of actual damages" pursuant to California Civil Code §§ 1794(c) or (e). (*Id.* ¶¶ 20, 28). Thus, by alleging willfulness and requesting the maximum of civil penalties, Plaintiff has put the maximum amount of civil penalties in controversy, and that amount should therefore be included.

Moreover, Plaintiff's argument that Defendant must provide evidence that civil penalties will be awarded to include such penalties in the amount in controversy calculation would lead to the untenable result of Defendant having to prove up its own liability for

civil penalties to demonstrate the amount in controversy.  Multiple courts have rejected Plaintiff's argument for that very reason.  *Canesco*, 2021 WL 5122231, at *20 (siding with "the majority of courts and more recent cases" that "find civil penalties appropriate for inclusion in the calculation of the amount in controversy without the defendant needing to 'prove a case against itself' with respect to liability for civil penalties"); *Treauhaf*, 2021 WL 2864877, at *2 (holding civil penalty claim of twice actual damages requires including that amount regardless of whether defendant presented evidence); *Rahman*, 2021 WL 2285102, at *2-3 ("Defendant is not required to prove the case against itself").

Therefore, the Court finds that Defendant has shown, by a preponderance of the evidence, that a civil penalty of up to two-times the vehicle price can be considered in determining whether the amount-in-controversy requirement has been met.  Combined with actual damages of $33,526.80, the addition of $67,053.60 readily meets the amount-in-controversy for purposes of this Motion.

### c.    *Punitive Damages*

Similarly, the Court finds that Defendant has shown by a preponderance of the evidence that punitive damages should be included in the amount-in-controversy.  While the amount in controversy exceeds $75,000 without punitive damages, such damages are properly considered for purposes of this Motion.  *See Fritsch*, 899 F.3d at 793 (amount-in-controversy includes "any result of the litigation, excluding interests and costs, that entails a payment by the defendant," including "damages (compensatory, punitive, or otherwise) . . . .").

Under California law, punitive damages may be awarded "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a).  "Indeed, California law is settled that punitive damages are recoverable for fraudulent concealment and fraud in the inducement causes of action." *Luzaich Striping v. Am. Asphalt S.*, CASE NO: 37-2020-00009193-CU-BC-NC, 2022 Cal. Super. LEXIS 818, at *4 (Jan. 14, 2022) (citing *Nissan Motor Acceptance Cases*, 63 Cal.

App. 5th 793, 829 (2021)); *Alliance Mortgage Co.*, 10 Cal. 4th 1226, 1241 (1995)).  To determine punitive damages, "[the] party asserting federal diversity jurisdiction may introduce evidence of jury verdicts in cases involving analogous facts." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 3:15-md-02672-CRB, 2019 WL 693234, at *5 (N.D. Cal. Feb. 19, 2019) (quoting *Surber v. Reliance Nat. Indem. Co.*, 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000)).

Plaintiff's complaint requests punitive damages for its fraudulent inducement–concealment claim, alleging Defendant's conduct "in refusing to disclose the Cooling System Defect was malicious, willful, reckless in its disregard of the potential harm to consumers, and reprehensible." (Compl. ¶ 60).  In opposition to the Motion, Defendant cites *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Product Liability Litigation* for the proposition that punitive damages of at least $50,000 is a reasonable estimate for present purposes.  (Opp. at 26–27 (citing 2019 WL 693234, at *7)).  Plaintiff does not dispute this figure in its reply.  *See* (Reply).  Thus, for purposes of this Motion, the Court finds that $50,000 is a reasonable estimate of punitive damages in this action. *See Arias*, 936 F.3d at 927 ("the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover").

#### d.  *Attorney's Fees*

Plaintiff argues the Court should grant the Motion because, in asserting the amount in controversy exceeds $75,000, Defendant failed to provide any evidence of a reasonable estimate of attorney's fees, costs, or expenses likely to be incurred in this matter.  (Mot. at 11–12).  As Defendant points out, Plaintiff does not dispute he is seeking attorney's fees or that they should be included in the amount-in-controversy calculation, only that no reasonable estimate was provided by Defendant.  (Opp. at 23–25).  The Court disagrees with Plaintiff.

In the Ninth Circuit, courts can consider attorneys' fees awarded under fee-shifting statutes when assessing the amount in controversy.  *Gonzales*, 840 F.3d at 649.  But a

removing defendant must "prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence," and must "make this showing with summary-judgment-type evidence." *Fritsch*, 899 F.3d at 795 (citation omitted). "A district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof." *Id.* To determine whether a defendant has satisfied this burden, courts have considered whether the proposed fees match those awarded in similarly situated cases, along with the history of fees requested by the plaintiff's counsel. *See, e.g.*, *Fontana v. Volkswagen Grp. of Am., Inc.*, Case No. 2:22-cv-03148-ODW(AGRx), 2022 WL 3335650, at *3 (C.D. Cal. Aug. 12, 2022) ("While a defendant may meet its burden . . . by identifying awards in other cases, those cases must be similar enough to the case at hand that the court can conclude that it is more likely than not that the plaintiff may incur a similar fee award." (quoting *Kaplan v. BMW of N. Am., LLC*, No. 21-CV-857 TWR (AGS), 2021 WL 4352340, at *6 (S.D. Cal. Sept. 24, 2021)); *Coronel v. Ford Motors Co.*, No. CV1909841DSFJEM, 2020 WL 550690, at *6 (C.D. Cal. Feb. 4, 2020) ("The Court believes, based on its experience and the declared experience of Mr. May, that Defendants have proven by preponderance of the evidence that attorney's fees will exceed $50,000. This conclusion is further supported by recent fee awards in other cases involving Plaintiff's counsel's law firm asserting claims against car manufacturers under the Song-Beverly Act." (citing cases)). "In estimating future attorney's fees, district courts may likewise rely on 'their own knowledge of customary rates and their experience concerning reasonable and proper fees.'" *Id.* at 795 (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

The complaint requests attorney's fees pursuant to California Civil Code 1794(d), along with California Civil Code Procedure 1032 and 1033.5. (Compl. at 14). Under California Civil Code 1794(d), a buyer of a defective consumer good is allowed to recover, as a part of the judgment, "a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended . . . ." In its Notice of Removal, Defendant states that it "anticipates that past and future attorney's fees will total at least

$50,000.  (Removal ¶ 15).  However, the Notice of Removal lacks any evidence to support this point.  Thus, in his Motion, Plaintiff argues that Defendant has failed to provide "any evidence of a reasonable estimate [of] attorney's fees, costs or expenses likely to be incurred in this matter."  (Mot. at 11).

In response, Defendant attaches to the opposition a declaration from its counsel.  *See* (ECF No. 19-1).  In this declaration, Defendant's counsel declares: "I anticipate that past and future attorney's fees will total at least $50,000" on this case, based on the fact that Plaintiff's counsel has, to date: (1) conducted a pre-filing investigation; (2) filed a 60-paragraph complaint alleging four different causes of action, including a fraud claim, in state court (paying a $450 filing fee that is recoverable); (3) propounded and received responses to a complete set of written discovery in state court; (4) received and drafted responses to Defendant's written discovery requests in state court; (5) participated in a conference of counsel pursuant to Federal Rule of Civil Procedure 26(f) and drafted the Joint Report; and (6) filed the instant Motion, along with a reply brief. *Id.* ¶ 5.  Defendant's counsel estimates that Plaintiff's counsel's hourly rate is "at least $400 and likely much higher" because, in 2020, Plaintiff's counsel was an associate at a separate firm making $385, (*id.* ¶ 8), and now, Plaintiff's counsel is lead partner at his own firm, and his rate "has presumably increased substantially."  (*Id.*).  Thus, given the activity in this case to date and future anticipated activity, Defendant's counsel estimates that attorney's fees for Plaintiff are likely to exceed $50,000, representing "only 125 hours of work on the case" at a rate of $400 per hour.  (*Id.*).

Defendant also cites to multiple cases arising under the Song-Beverly Act, showing $50,000 in attorney's fees is, on average, commonly viewed as a reasonable estimate in cases dealing with a plaintiff-purchaser suing a car manufacturer after their vehicle became defective during the warranty period, and the defendant failed to make sufficient repairs. *See* (Opp. at 25); *Coronel*, 2020 WL 550690, at *6 ("The Court believes, based on its experience and the declared experience of Mr. May, that Defendants have proven by preponderance of the evidence that attorney's fees will exceed $50,000."); *Rahman*, 2021

WL 2285102, at *3 (finding award of $40,000 to be reasonable); *see also Becker v. Ford Motor Co. (In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.)*, 2018 U.S. Dist. LEXIS 232980, at *18 (C.D. Cal. Sept. 10, 2018) ("Ford's declaration that the KLG Firm routinely seeks attorneys' fees of more than $100,000 in cases alleging the same claims against Ford is sufficient to establish that this amount is in issue.").  Finally, Defendant cites other cases arising under the Song-Beverly Act, showing that attorney's fees commonly *exceed* $50,000 at trial.  *See* (Opp. at 25–26); *Zomordian v. BMW of N. Am., LLC*, No. 2:17-cv-05061-DMG-PLA, 2019 WL 6534513, at *10 (C.D. Cal. July 23, 2019) (awarding $213,447.50 in attorneys' fees); *Forouzan v. BMW of N. Am., LLC*, No. 2:17-cv-03875-DMG-GJS, 2019 WL 856395, at *9 (C.D. Cal. Jan. 11, 2019) (awarding $215,560.50 in attorneys' fees); *Fuller v. FCA US LLC*, No. B286224, 2019 WL 2763114, at *1 (C.D. Ct. App. July 2, 2019) (affirming attorney's fee award of $327,782.75).

In its reply, Plaintiff fails to address why the cases Defendant cites are factually distinguishable from the present one.  *See* (Reply at 7-10).  Thus, because the Court finds the cases cited by Defendant sufficiently similar to serve as a proxy for attorney's fees in this case, the Court also finds that Defendant has shown, by a preponderance of the evidence, that an award of attorney's fees of $50,000 is a reasonable estimate for purposes of determining the amount-in-controversy.  *See, e.g.*, *Fontana*, 2022 WL 3335650, at *3.

### e.    Rebate or Negative Equity

Finally, in its supplemental memorandum, Plaintiff argues that remand is appropriate because Defendant "also . . . remain[s] notably silent on whether it would be seeking to deduct the $2,000 (listed on the [RISC] as a 'Manufacturer's Rebate') from [Plaintiff's recovery," (Supp. at 3), and whether Defendant would claim "a further deduction for the negative equity–of $5,200.000 (listed on the [RISC] as 'Total Net Trade-in (Indicate if negative number)')–which was rolled into the financing for the Subject Vehicle."  Of course, even if the Court were to assume the validity of these arguments, a deduction of $7,200.00 would not cause the amount-in-controversy to slip below the $75,000.01

threshold for purposes of this Motion.   Nevertheless, the Court concludes that these
arguments also fail as a matter of law.

As previously discussed, the "amount in controversy is established by what the
plaintiff demands, not by any reductions that a defendant might achieve through its
defenses."  *In Re: Ford Motor Co. DPS6 Powershift Transmission Products Liab. Litig.*,
2018 WL 5905942, at *4; *Becker*, 2018 U.S. Dist. LEXIS 232980, at *17.  For this reason,
multiple courts have held that the amount-in-controversy should neither be reduced by a
manufacturer's rebate nor negative equity.  *See, e.g.*, *Carillo*, 2021 WL 2711138, at *4
(refusing to reduce actual damages by manufacturer's rebate and noting that courts
"routinely calculate the amount of restitution a plaintiff may be entitled to recover under
the Song-Beverly Act without applying any reduction for manufacturers' rebates" and
collecting cases reaching the same conclusion); *Becker*, 2018 U.S. Dist. LEXIS 232980, at
*17-18.  Thus, the Court finds that Defendant did not err when it did not account for the
manufacturer's rebate or negative equity when calculating the amount-in-controversy.

Therefore, the Court concludes that Defendant has shown, through a preponderance
of the evidence, that the amount-in-controversy requirement is satisfied.   With both
requirements for diversity jurisdiction shown, the Court finds remand inappropriate.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's Motion is DENIED.

Dated: April 5, 2023

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE